## Commonwealth v. Russek, etc.

*Jos. G. McKeone*, district attorney, for Commonwealth.

*John M. Kurtz*, for defendant.

WINDLE, P. J., February 2, 1948.—On or about April 15, 1947, a petition of the above named Stephen Russek, alias Stephen Stokey, was presented to this court in a letter addressed to the "President Judge of

Supreme Court, Chester County Court House, West Chester, Pa." At the time petitioner was a prisoner in the State Prison of New York located in Dannemora, having been sentenced on January 10, 1941, by the general sessions court, New York County, N. Y., on a charge of attempted robbery, first degree, to that institution as a second offender for a period of not less than 15 nor more than 30 years. Said petition was drawn up by the prisoner himself and did not aver that he was at that time serving sentence in New York, but stated that he had been sentenced by this court on May 2, 1938, "after a plea of guilty to robbery", to imprisonment for a term of not less than two years nor more than four years. It averred also that petitioner's constitutional rights were violated in that he was denied the right to counsel at the time of the entry of his plea of guilty upon which said sentence was imposed by this court and on that ground prayed that said conviction and sentence be declared null and void. It also set forth that petitioner was a poor person and without means to obtain counsel or pay costs and asked this court to appoint an attorney for him and that he be permitted to prosecute his prosecution in "forma pauperis". Upon receipt thereof this court ordered that said petition be filed, that petitioner be allowed to present the matter in forma pauperis and appointed John M. Kurtz, Jr., Esq., a member of the Chester County bar, to represent petitioner.

On July 16, 1947, an amended petition, prepared by Mr. Kurtz after examining the record and forwarded to petitioner for execution, was filed reciting more in detail facts appearing on the record, averring that petitioner was not represented by counsel when he appeared before this court and for that reason did not fully understand the proceeding which then and there took place and believed that he was pleading guilty to violation of the automobile laws and of the Fire Arms Act of this Commonwealth. He stated that the

first sentence considered by the court imposing the sentence which he is now serving as a second offender was the one imposed by this court on May 2, 1938, on his plea of guilty of robbery, the subject of this proceeding. On said petition a rule was granted upon the District Attorney of Chester County to show cause why the original petition filed should not be amended as outlined above and, further, why the conviction and sentence of this court, under date of May 2, 1938, should not be declared null and void and stricken from the record.

The district attorney filed answers to both petitions, interposing no objection to said amendment, but raising issues of fact and averring that inasmuch as petitioner had served the sentence imposed by this court the question raised was academic.

When the matter was called for hearing on December 29, 1947, the deposition of petitioner was offered by his counsel and admitted in evidence and the oral testimony of Corporal C. W. Ross, Pennsylvania State police, prosecutor in the prosecution against petitioner here in question, of Joseph G. McKeone, the assistant district attorney in charge of pleas in this court on May 2, 1938, and of the deputy clerk of this court was heard. After argument of counsel, the matter is now before us for disposition.

After careful consideration and evaluation of all the testimony we find the facts established thereby to be as follows:

On May 2, 1938, petitioner was in the Chester County Prison, having been committed there on April 20, 1938, by a justice of the peace of this county who, after a preliminary hearing, had held him with two other men, accomplices, without bail for the action of the grand jury at the next term of court on the charge of robbery with aggravating circumstances, to wit, being armed with an offense weapon. On that date he and his two accomplices were brought to the

Chester County Court House where this court was in session for the disposition of miscellaneous business not involving trials by jury, including the acceptance of pleas of guilty by defendants who desired to waive the action of the grand jury and enter such pleas. The three men were interviewed by Joseph G. McKeone, Esq., then assistant district attorney, but at the time of hearing in this matter district attorney of this county, and Corporal C. W. Ross, prosecutor in the case. At that time Mr. McKeone had a bill of indictment which had been prepared for the action of the grand jury, which was to meet on May 16th, in which petitioner and one Frank DiVito and one Joseph Mandell were charged with robbery with an offensive weapon, another bill in which the same three men were charged with violation of The Vehicle Code in that they operated a motor vehicle without the knowledge and consent of the owner, a bill in which petitioner was charged with violating the Fire Arms Act in that he was carrying a .45 caliber revolver without first having obtained a license therefor and another bill charging Frank DiVito with violation of the Fire Arms Act in that he was carrying another revolver without first having obtained a license. Mr. McKeone explained to all three of the prisoners what they were charged with in said bills and asked them if they wanted to enter pleas of guilty to those charges. The three conferred for a short time in one corner of the room and then said that they wanted to plead guilty to all charges, whereupon Mr. McKeone proceeded to have them sign the bills under the endorsement which appears upon each bill as follows:

"May 2, 1938.

"The defendant being arraigned, waives the finding of a true bill and pleads guilty."

All three men signed the endorsement on the bill in which they were charged with violation of The Vehicle Code, petitioner signed the endorsement on the

bill charging him with violating the Fire Arms Act and DiVito signed the endorsement on the bill in which he was so charged. However, as respects the bill charging all three with robbery with aggravated circumstances, only the signatures of DiVito and Mandell appear thereon. The failure of petitioner to affix his signature to the endorsement on that bill along with his accomplices was a pure inadvertence on the part of petitioner and Mr. McKeone, occasioned, on Mr. McKeone's part, by a mass of detail work that he was endeavoring to dispose of at the time, there being several prisoners present who were entering pleas in the same fashion as above described and court being actually in session at the moment. When petitioner and DiVito and Mandell were brought into the courtroom for the purpose of carrying out their expressed intention of waiving the action of the grand jury in their cases and entering pleas of guilty, they were arraigned before the bench of the court, both members of the court as then and now constituted being present. Mr. McKeone stated to the court in their presence and hearing that the three were entering pleas of guilty to the bills of indictment above mentioned, announcing exactly what each man was pleading to, including the statement that petitioner was pleading guilty to robbery. After the prosecutor, Corporal Ross, made known to the court the facts and circumstances of the offenses and any other relevant facts, the court sentenced each defendant on the bill charging robbery with aggravating circumstances to pay a fine of $500 and costs of prosecution and to serve not less than two years nor more than four years in the Eastern State Penitentiary at solitary confinement and hard labor. Sentences on the other bills were suspended. Defendants were then committed to the custody of the sheriff. At no time, either in the anteroom or in open court did petitioner request counsel to represent him or intimate or suggest that he did not

understand the nature of any of the offenses with which he was charged. On the other hand, from the transcript of the record of the proceedings had at the preliminary hearing before the justice of the peace, a part of the official record in this case and also specifically introduced into evidence on petitioner's behalf, it appears that the victim of the robbery testified at length as to the details thereof, and that each defendant, after hearing said testimony, pleaded guilty.

Petitioner's application must be denied for several reasons. In the first place we believe the question raised is moot on two grounds. In the second place and if that were not sufficient his failure to be represented by counsel does not require the action he prays, because, for one thing, he did not request counsel and, for another, he entered a plea of guilty.

As respects the reason first mentioned, we have no doubt that that question before us is now moot. "The case, therefore, comes within the general rule, that if pending an appeal an event occurs which renders it impossible for the appellate court to grant any relief the appeal will be dismissed": Reichard's License, 45 Pa. Superior Ct. 606, 607. Here an event has occurred which makes it impossible to grant relief to petitioner. He has served the sentence imposed. Nothing can be done to restore to him the freedom of which he was deprived in doing so. And the relief in question must be relief in the matter involved, to wit, the prosecution against petitioner in this court, no. 106, May sessions, 1938. That relief in some other respect might be available to petitioner if his prayer was granted does not detract from the moot character of the question: McCarthy v. Wayne County Circuit Judge, 294 Mich. 368, 293 N. W. 683, in which a lieutenant of police sought to have reviewed, for the purpose of defeating his suspension from duty, certain proceedings before a circuit judge wherein the former was adjudged guilty of contempt of court and sentenced to serve five days

in jail, after he had served said jail sentence and been discharged, the court holding therein that any question as to the propriety of the contempt proceeding was moot. The question here appears to be moot for the additional reason that nowhere in this record, except the bare statement of petitioner, in regard to whose credibility we entertain serious doubt, does it appear that his unquestioned pleas of guilty on the bills of indictment charging violations of the Fire Arms Act and of The Vehicle Code does not render him a second offender within the meaning of the applicable law of the State of New York and therefore liable to the present sentence imposed upon him as such.

Aside from the above, however, petitioner is not entitled to the relief he prays. After due consideration of all the evidence before us we are constrained to believe, as above found as a fact, that he did not request counsel as he avers, but was satisfied to enter his pleas without the benefit thereof, as the transcript of the record of the justice of the peace indicates he did at his preliminary hearing before that officer. Petitioner's testimony contained in his deposition is so clearly false in many particulars to the official knowledge of the members of this court that little credence can be given to any of it. He speaks of "the judge", in the singular when as a matter of fact, both judges of this court were on the bench when his plea was taken, as the records of this court show. Further, his statement that the district attorney told him that "with or without counsel I would have to stand trial", meaning doubtless trial on that day, cannot be accepted as true in view of the fact, for one thing, that no petit jury was present for the trial of cases at that time—the next trial sessions of this court did not begin until three weeks after the date in question, or on May 23, 1938, as the records of this court show. Nor does either member of this bench—there has been no change in that membership since 1938—have any recollection of a

request by any defendant for a postponement until "he could get a counsellor from New York". Such a request, so unusual in this court, had it been made, would have been remembered even at this late date and any request for counsel would have been granted, as has petitioner's present one. His alleged plea of "guilty to unconscious of the possession of a pistol" cannot be credited. If by that he means that a gun was in his possession without his knowing it was there and he so stated, his plea would not have been accepted by this court which has frequently refused to accept similar pleas of defendants hoping to mitigate their offenses by such statements. Without further laboring the point it is sufficient to say that we cannot believe petitioner's self-serving statements in regard to his denial of counsel, to his entry of a plea of guilty and to his guilt of the offense charged. On the other hand, we are constrained to accept Mr. McKeone's version of what took place on the morning in question; it is entirely consistent with the practice and procedure that has obtained in this court for many years in regard to pleas by defendants who wish to waive the finding of a true bill by the grand jury and we have no doubt that the matter was conducted just as he and the prosecutor and the deputy clerk of this court say it was. (We have no independent recollection thereof.)

A defendant who does not ask for counsel, in other than murder cases, is not deprived of any constitutional right because he was not represented by counsel or informed that one would be assigned him on request: Commonwealth ex rel. McGlinn v. Smith, 344 Pa. 41; Commonwealth ex rel. Grierson v. Ashe et al., 353 Pa. 1; Commonwealth ex rel. Withers v. Ashe, 350 Pa. 493; Commonwealth ex rel. Fitts v. Smith, 158 Pa. Superior Ct. 104. And especially is that so when a defendant enters a plea of guilty: Commonwealth ex rel. Cook v. Ashe, 144 Pa. Superior Ct. 1; Commonwealth ex rel. Curtis v. Ashe, 139 Pa. Superior Ct. 417.

Nor does the fact that, through inadvertence, he failed to sign the plea endorsed on the bill of indictment charging robbery work to his better advantage. He pleaded guilty, as he states in his original petition, in open court. His plea was entered on the bill of indictment as required by the Act of April 15, 1907, P. L. 62, when he stood at the bar of the court in open court and acquiesced in the district attorney's statement that he was pleading guilty to the bill in question. Nowhere in the statute do we find any requirement that said plea shall be endorsed on the bill and signed by the accused. The requirement is that it shall be "entered thereon". Here it was by petitioner's action in court. He interposed no objection to the imposition of sentence on that plea. Not until long after he has completed serving the imprisonment constituting a part of said sentence did he question the legality thereof and then only on the ground that he was not represented by counsel when his plea was entered. Under those circumstances he cannot now take advantage of his failure to sign the endorsement in question. As said in Commonwealth ex rel. Moore v. Ashe, 341 Pa. 555, wherein defendant had signed a paper indicating his willingness to waive the finding of a bill of indictment against him and to plead guilty to a charge named therein, which paper was attached by a fastener to a bill of indictment subsequently prepared but on which bill no plea of guilty was actually "entered", (by which, from the context, we understand is meant "endorsed"), "It is also desirable, though not required by the statute, that the defendant sign this plea [one "entered on" i. e. "endorsed" the bill], if he is able to do so".

". . . The record does show that the 'defendant pleaded guilty in open court'.

". . . While the procedure herein reviewed was, to the extent noted, irregular and deficient, we find no such impairment of the substantial rights of the defendant as to warrant his discharge from imprison-

ment. The record in its entirety shows sufficient compliance with the requirements of criminal procedure to clothe the court with jurisdiction to impose the sentence challenged."

Rule discharged. Petition denied.